# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MARCUS HILLIARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-01144 |
| | ) | |
| NATIONAL BOARD OF MEDICAL | ) | Hon. Martha M. Pacold |
| EXAMINERS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OF LAW IN SUPPORT
## OF NBME'S MOTION TO DISMISS

Plaintiff Marcus Hilliard ("Mr. Hilliard") has filed a one-count Complaint alleging that the National Board of Medical Examiners ("NBME") violated Title III of the Americans with Disabilities Act ("ADA") by not approving his request for double the standard amount of testing time that is provided to examinees on Step 1 of the United States Medical Licensing Examination ("USMLE"). He seeks an injunction that would require NBME to provide him double testing time, "compensatory damages," costs and attorney's fees. NBME denies his claim.

Despite receiving 50% extra testing time, Mr. Hilliard has taken—and failed—the Step 1 exam three times. Based on documentation he submitted to NBME, he has apparently been dismissed from medical school, making him ineligible to take the Step 1 exam again. He is not currently registered for the test.

The only relief available under Title III of the ADA is "preventive" injunctive relief, but Mr. Hilliard does not have standing to pursue any such relief. Mr. Hilliard also fails to state a claim for relief to the extent he purports to seek monetary damages, because damages cannot be recovered under Title III. His complaint against NBME should be dismissed.

147536723.2

## BACKGROUND

### I.     NBME AND THE USMLE

NBME is a not-for-profit organization based in Philadelphia, Pennsylvania. NBME's mission is to protect the health of the public through the development and administration of high-quality examinations. Decl. of Catherine Farmer, Psy.D. ¶ 3 ("Farmer Decl."). In conjunction with the Federation of State Medical Boards, NBME sponsors the USMLE program. *Id.* ¶ 4.

The USMLE is a standardized examination used to evaluate applicants' competence for medical licensure. *Id.* It is designed to assess an examinee's ability to apply knowledge, concepts, and principles, and to demonstrate fundamental patient-centered skills, that constitute the basis of safe and effective patient care. *Id.* Medical licensing authorities across the United States rely upon the USMLE to help evaluate the qualifications of individuals seeking an initial license to practice medicine. *Id.* ¶ 5.

Three "Step" exams make up the USMLE, taken at different times in an individual's medical education process: Step 1, Step 2 (consisting of the Step 2 Clinical Knowledge exam (Step 2 CK) and the Step 2 Clinical Skills exam (Step 2 CS)), and Step 3. *Id.* ¶ 6. Step 1, the examination that is the subject of Mr. Hilliard's Complaint, assesses whether candidates understand and can apply important science concepts that are basic to the practice of medicine. *Id.*

Examinees take the USMLE under standard conditions, including standard timing. *Id.* ¶ 7. However, NBME provides testing accommodations to individuals who document that they have a disability within the meaning of the ADA and that such accommodations are necessary to afford them access to the exam. *Id.* ¶¶ 7-8.

NBME reviews all requests for accommodations on an individualized basis, with the objective of ensuring that "individuals with *bona fide* disabilities receive accommodations, and

that those without disabilities do not receive accommodations that they are not entitled to, and which could provide them with an unfair advantage…. As administrator of the national exam used by … states for licensing medical doctors, [NBME] has a duty to ensure that the examination is fairly administered to all those taking it." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 88-89 (2d Cir. 2004) (rejecting ADA claims brought by an examinee against NBME and her medical school). NBME also has a duty to protect the integrity of USMLE scores, given the USMLE's role in helping medical licensing authorities ensure the minimum competency of licensed physicians.

To be eligible to take the USMLE, an individual must be a medical student officially enrolled in, or a graduate of, an accredited United States or Canadian medical school program leading to the MD or DO degree or a medical student officially enrolled in, or a graduate of, a medical school that is outside the United States and Canada meeting certain eligibility criteria. *See* Farmer Decl. ¶ 22 and Ex. I (USMLE Bulletin, "Eligibility for the USMLE Steps"). If an individual is dismissed or withdrawn from medical school, he is not eligible for the USMLE, even if he is appealing the school's dismissal decision or otherwise contesting his status. *Id.* ¶ 23.

## II. MR. HILLIARD'S REQUESTS FOR ACCOMMODATIONS ON STEP 1 OF THE USMLE AND STATUS IN MEDICAL SCHOOL

Mr. Hilliard first requested accommodations on the Step 1 exam on or about September 26, 2016. He sought 100% additional testing time (double time) over 2 days. *Id.* ¶ 10 and Ex. A. By letter dated October 14, 2016, NBME notified Mr. Hilliard that his "documentation does not demonstrate that 200% testing time is an appropriate modification of your Step 1 test administration." *Id.* ¶ 11 and Ex. B; *see also* Complaint ¶ 10. NBME informed Mr. Hilliard that he would be provided with time and one-half testing accommodations (*i.e.*, 50% additional testing

- 3 -

time) and that the test would be administered over two days in a separate testing room. Farmer Decl. Ex. B.

Mr. Hilliard did not sit for the test after submitting that accommodation request. *Id.* ¶ 12. Instead, he submitted another request for accommodations almost one year later, on or about September 25, 2017. *Id.* This time, he did not seek 100% additional time—instead, he sought "the same accommodations" he was previously approved to receive (*i.e.*, 50% additional time). *Id.* ¶ 12 and Ex. C. NBME responded by letter dated September 27, 2017, informing him that he would be provided 50% additional testing time, over two days, and a separate room. *Id.* ¶ 13 and Ex. D.

Almost nine months later, on June 21, 2018, Mr. Hilliard finally sat for the Step 1 exam with his requested accommodations. *Id.* ¶ 14. He did not obtain a passing score. *Id.*

On or about July 23, 2018, Mr. Hilliard submitted another request for accommodations on the Step 1 exam. He requested the same accommodations he previously was provided (50% additional time). *Id.* ¶ 15 and Ex. E. By letter dated July 23, 2018, NBME granted this request. *Id.* ¶ 16 and Ex. F. Mr. Hilliard took the Step 1 exam with the approved accommodations on November 18, 2018 and did not pass. *Id.* ¶ 17.

On or about February 16, 2019, Mr. Hilliard submitted another request for accommodations on the Step 1 exam. This time, he requested double testing time (100% additional time). *Id.* ¶ 18 and Ex. G. By letter dated May 1, 2019, NBME denied his request for increased testing time, informing him that "[t]here is insufficient evidence to demonstrate that 100% additional testing time is an appropriate modification of [his] USMLE Step 1 test administration." *Id.* ¶ 19 and Ex. H. NBME again approved Mr. Hilliard for 50% additional testing time over two days and 45 minutes of break time each day. *Id.* Mr. Hilliard sat for the Step 1 exam with these approved accommodations on August 30, 2019. *Id.* ¶ 20. He did not pass the test. *Id.*

Mr. Hilliard began the registration process to take the Step 1 examination a fourth time by submitting an application on or about September 18, 2019. *Id.* ¶ 21. After an examinee submits an application to take a USMLE exam, NBME adds his name to a roster for his medical school to verify his eligibility to test. After Mr. Hilliard submitted his application, staff at Loyola University of Chicago Stritch School of Medicine ("Stritch School of Medicine") informed NBME that Mr. Hilliard was not currently enrolled in the school. *Id.* ¶ 24. Because enrollment is an eligibility requirement for taking the Step 1 exam, NBME cancelled Mr. Hilliard's incomplete registration. *Id.* ¶ 24. In an October 10, 2019 email, Mr. Hilliard informed NBME that he was appealing his dismissal from medical school. *Id.* ¶ 25 and Ex. J.

On or about October 21, 2019, Mr. Hilliard submitted a testing accommodation request to NBME, seeking 100% additional time and a separate testing room. *Id.* ¶ 26 and Ex. K. On October 22, 2019, NBME informed Mr. Hilliard that it could not review his accommodation request because he was not registered for the test. *Id.* ¶ 27 and Ex. L.

On January 31, 2020, Mr. Hilliard forwarded a letter to NBME that he apparently received from the U.S. Department of Education, Office for Civil Rights (OCR). The letter indicated that Mr. Hilliard had filed a complaint with OCR alleging that the Stritch School of Medicine discriminated against him on the basis of disability by, among other things, denying his "request for a modification of its policy requiring students to pass the Medical Licensing Examination (USMLE) Step 1 exam within three attempts." *Id.* ¶ 28 and Ex. M at 1. OCR reported that it opened an investigation into this allegation. *Id.*, Ex. M at 3. "Opening a complaint for investigation in no way implies that OCR has made a determination with regard to the merits of the complaint." *Id.*, Ex. M at 6.

Mr. Hilliard is not currently registered for any USMLE examination. *Id.* ¶ 29.

**ARGUMENT**

Mr. Hilliard alleges that he is an individual with a disability within the meaning of the ADA and that NBME violated a specific provision in Title III of the ADA applicable to tests taken for professional licensure (42 U.S.C. § 12189) by not providing him with double testing time. Complaint ¶¶ 38-57. The Court lacks subject matter jurisdiction over this claim. Mr. Hilliard does not have standing to sue NBME because he seeks accommodations on an exam that he is not eligible or registered to take. His claim must therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). His claim for damages does not prevent dismissal, because damages are not available to plaintiffs suing under Title III of the ADA.

**I. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER MR. HILLIARD'S CLAIM AND REQUEST FOR INJUNCTIVE RELIEF**

Based on the evidence currently available to NBME, Mr. Hilliard is not enrolled in medical school. That means he is not eligible to take any USMLE exam and, in turn, that he does not have standing to pursue prospective injunctive relief against NBME relating to taking the USMLE exam. Absent standing, the Court lacks subject matter jurisdiction, and his complaint must be dismissed. "Rule 12(b)(1) provides for dismissal of claims over which the federal court lacks subject matter jurisdiction." *Filardi v. Loyola Univ.*, No. 97 C 1814, 1998 WL 111683, at *2 (N.D. Ill. 1998).

"In reviewing a 12(b)(1) motion to dismiss, the court may look beyond the complaint and view any extraneous evidence submitted by the parties to determine whether subject matter jurisdiction in fact exists." *Id.* at *2. Mr. Hilliard bears the burden of establishing subject matter jurisdiction. *See id.* "When a party moves for dismissal under Rule 12(b)(1), challenging the factual basis for jurisdiction, the nonmoving party must support its allegations with competent proof of jurisdictional facts." *Id.* (citation omitted).

- 6 -

"Article III, section 2 of the United States Constitution 'limits the 'judicial power' to the resolution of 'cases' and 'controversies.''" *McDaniel v. Bd. of Educ. of City of Chicago*, 956 F. Supp. 2d 887, 892 (7th Cir. 2012) (citation omitted). "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). "[T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized,…and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.'…Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly…trace[able] to the challenged action of the defendant, and not … th[e] result [of] the independent action of some third party not before the court. …Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 560-61 (internal citations and citations omitted).

The only relief available under Title III of the ADA is preventive injunctive relief. *See* 42 U.S.C. § 12188(a)(1) (making the "remedies and procedures set forth in section 2000a-3(a) of this title" applicable to Title III violations); 42 U.S.C. § 2000a-3(a) (allowing "a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order"). Relief under Title III is available to any person who is disabled within the meaning of the ADA who can show that he is "'about to be subjected to discrimination.'" *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1076 (7th Cir. 2013) (quoting 42 U.S.C. § 12188(a)(1)). "'[T]he statute makes clear that either a continuing or a threatened violation of the ADA is an injury within the meaning of the Act. A plaintiff is therefore entitled to injunctive relief to stop or to prevent such injury.'" *Id.* (citation omitted). "Because injunctions regulate future conduct, a

party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to merely conjectural or hypothetical—threat of future injury." *Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1022 (D.C. Cir. 1998).

Mr. Hilliard is seeking injunctive relief requiring NBME to provide him with his requested accommodations on the USMLE Step 1 exam and future USMLE examinations. *See* Complaint ¶¶ 39-57, Prayer for Relief at (b), (d), and (e). Mr. Hilliard does not have standing to seek such relief, however, because there is no continuing or threatened likelihood of injury for which any preventive relief is necessary or would prevent the alleged harm. Mr. Hilliard is not registered for any USMLE exam, and based on available evidence he is not eligible to take any USMLE exam because he is not currently enrolled in medical school. *See* Farmer Decl. ¶¶ 21-29 and Exs. I-M. His ineligibility to test is fatal to his standing to pursue his ADA claim. *See Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 834-35 (7th Cir. 2019) (blind individual challenging accessibility of credit union website lacked standing to sue because he was not eligible to be a member of the credit union); *Filardi v. Loyola Univ.*, 1998 WL 111683, at *3-4 (former student lacked standing to challenge alleged inaccessible facilities after she graduated from school).[1]

Mr. Hilliard may argue that OCR is investigating his claim that Stritch School of Medicine discriminated against him by not allowing him more than three opportunities to pass the Step 1 examination. NBME is not aware of the current status of this investigation, but as the OCR letter itself makes clear, "[o]pening a complaint for investigation in no way implies that OCR has made

---

[1] *Cf. Cunningham v. Univ. of N.M. Bd. of Regents*, 531 Fed. App'x 909, 918 (10th Cir. 2013) (district court lacked subject matter jurisdiction over Title III ADA complaint against NBME, because plaintiff did "not currently have any pending [accommodation] requests before the Board" and his claim "was not ripe for review"); *Kober v. Nat'l Bd. of Med. Exam'rs*, No. 09-1772, 2010 WL 2342480, at *3 (W.D. La. June 7, 2010) (dismissing Title III ADA complaint pursuant to Rule 12(b)(1) where plaintiff "has no request pending before the NBME" for decision).

147536723.2

a determination with regard to the merits of the complaint." Farmer Decl. Ex. M at 6. It is entirely speculative that Mr. Hilliard would obtain relief against the Stritch School of Medicine and be re-admitted to medical school. There is no non-speculative future injury sufficient to support Mr. Hilliard's standing to pursue an ADA Title III claim against NBME relating to the USMLE. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ("The speculative nature of Lyons' claim of future injury requires a finding that this prerequisite of equitable relief has not been fulfilled.").

Mr. Hilliard also seeks "[i]njunctive relief ordering NBME to expunge Plaintiff's previous three attempts at taking the Step 1 exam due to failure to provide reasonable accommodations[.]" Complain, Prayer for Relief at (a). This is not preventive relief aimed at any continuing or threatened alleged discrimination and is not appropriate relief under the Title III of the ADA. Likewise, Mr. Hilliard does not have standing to pursue injunctive relief "ordering the NBME to undergo periodic training and disability awareness." Prayer for Relief at (c). Mr. Hilliard is not facing current or threatened injury entitling him to injunctive relief, even assuming this type of broad relief would be appropriate in an individual case.

## II.    MR. HILLIARD IS NOT ENTITLED TO MONETARY DAMAGES FOR HIS ADA TITLE III CLAIM

Mr. Hilliard purports to seek compensatory damages for his ADA Title III claim. *See* Prayer for Relief at (f). Because this aspect of his claim fails as a matter of law, it does not give him standing. Monetary damages are not available under Title III of the ADA. *See* 42 U.S.C. § 12188(a); *Scherr*, 703 F.3d at 1075 ("damages are not available under Title III").

- 9 -

- 10 -

## CONCLUSION

Mr. Hilliard lacks standing to assert his ADA Title III claim against NBME.  His

Complaint should therefore be dismissed for lack of subject matter jurisdiction.

Dated:  March 17, 2020    Respectfully submitted,

            /s/ Jillian Sommers
            Jillian Sommers, IL Bar No. 6317803
            Perkins Coie LLP
            131 S. Dearborn St., Suite 1700
            Chicago, IL 60603-5559
            Tel: (312) 324-8587
            jsommers@perkinscoie.com

147536723.2

## CERTIFICATE OF SERVICE

On this date I caused to be served on each of the attorneys identified below, via CM/ECF

and email, a copy of the foregoing document:

Cynthia M. Rote
Integrate Legal PC
12533 Wagon Wheel Road
Rockton, IL 61072
Telephone: 815-255-4695
Email: Cynthia@integrate-Legal.com
Email: service@Integrate-Legal.com


*Attorney for Marcus Hilliard*

Dated: March 17, 2020                    Respectfully submitted,

                                         /s/ Jillian Sommers
                                         Jillian Sommers, IL Bar No. 6317803
                                         Perkins Coie LLP
                                         131 S. Dearborn St., Suite 1700
                                         Chicago, IL 60603-5559
                                         Tel: (312) 324-8587
                                         jsommers@perkinscoie.com

                                         Attorneys for National Board of Medical Examiners

- 11 -