IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARCUS HILLIARD, | ) | **EXHIBIT A:** |
| | ) | **PROPOSED AMENDED COMPLAINT** |
| PLAINTIFF, | ) | |
| | ) | Case No. 2020-cv-01144 |
| v. | ) | |
| | ) | |
| NATIONAL BOARD OF MEDICAL | ) | |
| EXAMINERS, and LOYOLA | ) | |
| UNIVERSITY CHICAGO STRITCH | ) | |
| SCHOOL OF MEDICINE | ) | |
| | ) | |
| DEFENDANT. | ) | |

### AMENDED COMPLAINT

NOW COMES, Plaintiff, MARCUS HILLIARD, by and through his attorneys, INTEGRATE, LEGAL, P.C., and in complaint of Defendants, NATIONAL BOARD OF MEDICAL EXAMINERS and LOYOLA UNIVERSITY CHICAGO STRITCH SCHOOL OF MEDICINE and states as follows:

### INTRODUCTION

Plaintiff, Marcus Hilliard, (hereinafter referred to as "Plaintiff") is an individual with a medically diagnosed disabilities in the areas of: written expression, basic reading skills, reading comprehension, mathematic calculation, mathematic reasoning, sequencing ability, short-term auditory memory, attention, and speed of eye-hand coordination.

Plaintiff also submitted substantial documentation to the National Board of Medical Examiners (hereinafter referred to as "NBME") reflecting the nature and extent of his disabilities



in support of his requested testing accommodations. However, the NBME refused to grant Plaintiff his requested accommodation of double-time to complete his Step 1 Medical Boards Examination. Plaintiff's request for double-time to complete this exam was denied on three occasions. As a result, Plaintiff failed this examination three times. Loyola University Chicago Stritch School of Medicine (hereinafter referred to as "Stritch") failed to provide Plaintiff with reasonable accommodation, and now Plaintiff is no longer in satisfactory academic standing with the school and is no longer eligible to sit for the USMLE Step 1 Medical Boards Examination.

Due to both Stritch's and the NMBE's violations of the ADA Plaintiff is now stuck in a circular nightmare. Stritch dismissed Plaintiff because he failed the USMLE three times. The NBME will not allow Plaintiff to sit for a fourth exam (after Plaintiff failed three times as a direct result of the NBME's violation of the ADA) because Plaintiff he is not enrolled in Medical School; however, Plaintiff is not enrolled in medical school because he failed the NBME three times. And the circular nature of it continues, as further illustrated below:



Plaintiff brings this case pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182 *et seq.* ("ADA"), and under Title III's implementing regulations found at 28 C.F.R. § *et seq.*

## JURISDICTION AND VENUE

1. Plaintiff's claims arise under Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182 *et seq.* ("ADA"), and under Title III's implementing regulations found at 28 C.F.R. § *et seq.* Therefore, the United States District Court of the Northern District of Illinois has jurisdiction over these claims because the claims arise out of the protections afforded by Title III of the ADA.

2. This complaint is timely filed within two (2) years from the letter sent by Stritch's Associate Dean James Mendez dated September 25, 2019, dismissing him as a student, and within two (2) years from receiving notification from NBME on September 27, 2019 informing Plaintiff that he is no longer eligible to sit for the Medical Boards exam.

3. Venue in the district is proper under 28 U.S.C. § 1391(b). The Defendant resides in the Northern District, Eastern Division, and the events giving rise to Plaintiff's claim occurred here.

## PARTIES

4. Plaintiff, MARCUS HILLIARD, was enrolled as a medical student at Stritch from August 2015 until his dismissal in September 2019.

5. Plaintiff is an individual with medically diagnosed disabilities in the areas of: written expression, basic reading skills, reading comprehension, mathematic calculation, mathematic reasoning, sequencing ability, short-term auditory memory, attention, and speed of eye-hand coordination.

6. Plaintiff is a qualified individual with a disability and meets the eligibility requirements under the ADA.



7. Stritch, a private secondary institution, is a public accommodation under Title III of the ADA as a "facility operated by a private entity whose operations affect commerce".

8. NBME is an independent, not-for-profit organization that provides standardized licensing examinations, the successful completion of which is required for medical licensure in the United States and in the State of Illinois, including the Northern District of Illinois.

## FACTUAL ALLEGATIONS

9. Plaintiff is a qualified student with a disability under the ADA.

10. Plaintiff has a learning disability that substantially limits his major life activities of learning, reading and writing.

11. Plaintiff began his enrollment as a student at Loyola University of Chicago Stritch School of Medicine in August 2015 as a medical student.

12. Plaintiff also holds a B.S. degree in Chemical Engineering, an M.S. degree in Chemical Engineering, a Ph.D. degree in Chemical Engineering, an M.B.S. degree in Bioengineering.

13. Each of Plaintiff's prior academic institutions made reasonable accommodations for Plaintiff, including: a.) granting him double additional time to work on class assignments and tests; b.) alternative test locations providing quiet environments; c.) allowed assistive devices in the classrooms such as a tape recorder for class lectures; d.) use of a computer for all assignments; and e.) alternate format for texts and software provided by the school.

14. Upon Plaintiff's arrival at Stritch, the school failed to assign an individual or office solely to assist students with Disabilities.

15. On July 16, 2015, Plaintiff met with former Director of the Academic Center for Excellence and Accessibility Josh Hopps, Ph.D. to discuss policies in place at Stritch to inform course directors and coordinators of his approved accommodations.



16. During this meeting with Dr. Hopps, Plaintiff requested a letter outlining Plaintiff's approved accommodations. This letter request was denied, leaving Plaintiff with no formal written documentation or a clear procedure to determine his approved accommodations.

17. On July 15, 2015, Plaintiff also received notice from the Stritch Technical Standards Review (TSR) Committee where the recommendation of double time on examinations was denied.

18. Plaintiff was further denied accommodations through denied access of reading materials, course materials, use of scratch paper during exams, and accommodations on school exams including his Patient Centered Medicine 1 exam.

19. On October 14, 2016, Plaintiff received notification from the NBME that it denied Plaintiff's request for double time on the USMLE Step 1 exam.

20. It was not until April 26, 2017 that Plaintiff received an official letter from Stritch outlining his approved accommodations.

21. Plaintiff was continuously denied accommodations throughout his time at Stritch, and Plaintiff was notified on June 29, 2017 that he was placed on academic probation.

22. On June 21-22, 2018, Plaintiff sat for the USMLE Step 1 Examination for the first time, after he was denied double time to complete the exam and granted only time-and-one-half to complete the exam. Plaintiff failed this attempt.

23. On September 25, 2017, Plaintiff submitted a second accommodation request of double-time on his Step 1 exam to the NBME.

24. On September 28, 2017, Plaintiff learned that this request was again, denied by the NBME.

25. On several of Plaintiff's practice exams, upon the recommended by Stritch, Plaintiff successfully passed his practice Step 1 exams when allowing for double-time for



completion.

26. On November 9-10, 2018, Plaintiff sat for the USMLE Step 1 exam for the second time, where he was again denied the accommodation of double to complete the exam and granted only time-and-one-half to complete the exam. Plaintiff learned that he again failed this exam.

27. On February 16, 2019, Plaintiff submitted a subsequent accommodation request to the NBME for his third attempt at taking the USMLE Step 1 exam. This was again denied and Plaintiff was again only granted time-and-one-half to complete this exam for the third time despite his requests for accommodation of double time yet again.

28. During this time period Stritch continued to push Plaintiff to take the exam and provided Plaintiff no support, assistance, guidance or counseling on how to further appeal the denial of his accommodation with the NBME.

29. On August 30-31, 2019, Plaintiff sat for the USMLE Step 1 Examination for the third time at only time and one half accommodations. Plaintiff failed the exam.

30. The NBME allows enrolled medical students to take the Step-1 exam up to six times.

31. On September 18, 2019, Plaintiff requested a fourth attempt to sit for the Step 1 Examination.

32. Plaintiff met with several Stritch administrators to discuss his options from September 20-25, 2019.

33. Plaintiff received a formal dismissal letter on September 25, 2019 from Stritch.

34. On September 27, 2019, Plaintiff received a notification from the NBME that staff at Stritch informed them that Plaintiff was no longer officially enrolled in the school, and



formal enrollment in a medical school program is an eligibility requirement to sit for the USMLE Step 1 exam.

35. On September 30, 2019, Dr. Pachan, a psychologist, drafted a letter on behalf of Plaintiff requesting that NBME reconsider its accommodations for Plaintiff.

36. On October 10, 2019, Plaintiff received notification from the NBME Disability Services that they received his letter detailing his learning disability from Dr. Pachan, but since Plaintiff was no long eligible to set for the exam due to his dismissal from Stritch, the NBME would be taking no further action.

37. On October 17, 2019, Associate Dean Mendez at Stritch demanded Plaintiff send Stritch his appeal letter, even though pursuant to school policy Plaintiff was to have thirty days from receipt of the letter of dismissal to submit his appeal.

38. Plaintiff submits his incomplete appeal to Associate Dean Mendez on October 17, 2019.

39. On October 22, 2019, less than thirty days after his dismissal, Plaintiff received notification from Associate Dean Mendez that his appeal letter for reentry into Stritch was denied.

40. On October 24, 2019, Plaintiff submitted his appeal to the Provost, which was denied on November 8, 2019.

**COUNT I – VIOLATION OF THE ADA**
**(Plaintiff vs. Stritch School of Medicine)**

41. Plaintiff repeats and realleges the allegations and statements in the previous paragraphs herein and further states:

42. Plaintiff brings this complaint under Title III of the ADA which prohibits public accommodations from discriminating against individuals on the basis of disability. Title III provides that:



> [N]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182.

43. Under the ADA, Stritch has an ongoing obligation to provide students with "reasonable modification" and to engage in the interactive process with students to identify potential effective accommodations.

44. Due to the actions and inactions of Stritch as alleged herein, Stritch has discriminated against Plaintiff and excluded him from participating in, or enjoying the benefits of, its services, programs, and activities, in violation of the ADA, 42 U.S.C. § 12101 *et. seq.*

45. A request for reasonable accommodation may originate directly from the individual with the disability or from the individual's representative.

46. A request for a reasonable accommodation under the ADA does not require any specific language, so long as it conveys that a person has a disability and needs a reasonable accommodation for disability-related reasons.

47. Once a reasonable accommodation is made by a qualified individual with a disability or an individual's representative, it triggers the interactive process to identify prospective accommodations.

48. Plaintiff attempted to discuss his academic needs and coordinate reasonable modifications to accommodate his disability on numerous occasions at Stritch with: the Stritch Technical Standards Review committee, former Director of the Academic Center for Excellence and Accessibility Dr. Josh Hopps, Dr. Clipstone, Dr. Kristopaitis, Dr. Levin, Dr. Derhammer, Dr. Edwards, ACE director Mrs.



Schalansky, the Admissions department, Assistant Dean Sonntag, and Associate Dean Mendez between March 2015 and October 2019.

49. Stritch staff and administration violated the ADA by failing to provide reasonable modifications and accommodations in the form of making insufficient and inconsistent accommodations to Plaintiff during his time at the school. Several of Plaintiff's requests for classroom and test-taking accommodations were denied outright.

50. Stritch staff and administration violated the ADA by failing to provide reasonable modifications and accommodations in the form of allowing Plaintiff remain enrolled at Stritch and sit for the Step-1 exam a fourth time.

51. Stritch discriminated against Plaintiff in violation of the ADA by dismissing him as a student in September 25, 2019, thereby denying him the full and equal enjoyment, as well as excluding him from participating in or benefiting from the "goods, services, facilities, privileges, advantages, or accommodations" of Stritch. 42 U.S.C. § 12182(a).

52. Stritch's past and ongoing failure to provide reasonable accommodations to Plaintiff, its disparate treatment of Plaintiff, and its dismissal of Plaintiff are in violation of Plaintiff's rights under the ADA.

53. Due to Stritch's violations of the ADA which resulted in Plaintiff being dismissed from Stritch, the NBME has advised Plaintiff that he is not eligible to set for the USMLE Step 1 Exam because he is no longer enrolled in a medical school.



54. Due to Stritch's violations of the ADA which resulted in Plaintiff being dismissed from Stritch Plaintiff is unable to transfer to a different medical school as his school transcript shows dismissal.

55. Plaintiff has no adequate legal remedy and Stritch's violations of the ADA can only be remedied by requiring Stritch reinstate Plaintiff as a medical student.

56. As a direct and proximate result of Stritch's actions and Stritch's repeated failure to comply with the ADA, Plaintiff has suffered severe emotional plain, anguish, embarrassment, and humiliation.

**WHEREFORE**, Plaintiff, MARCUS HILLIARD, prays that this Honorable Court grant judgment in his favor find that Stritch has subjected and continues to subject Plaintiff to discrimination because of his disabilities in violation of the ADA. Plaintiff respectfully request the following relief:

a. Permanent injunctive relief ordering Stritch to reinstate Plaintiff;

b. Permanent injunctive relief order Stritch to immediately notify the NBME that Plaintiff is enrolled and eligible to sit for the Step 1 exam at a time of Plaintiff's choosing;

c. Permanent injunctive relief prohibiting Stritch from treating Plaintiff differently than his non-disabled counterparts;

d. Permanent injunctive relief ordering Stritch to undergo periodic training regarding the ADA and disability awareness;

e. All costs incurred by this suit, including any attorney's fees; and

f. Any other and further relief deemed just by this court.



## **COUNT II – VIOLATION OF THE ADA**
**(Plaintiff vs. NBME)**

57. Plaintiff repeats and realleges the allegations and statements in the previous paragraphs one through forty (1-40) herein and further states:

58. Plaintiff is an individual with a disability as defined by the ADA because he has a mental impairment that substantially limits one or more of his major life functions, namely, learning disabilities that substantially limit his major life functions of learning, reading, and writing. 42 U.S.C. § 12102(2)(A).

59. Title III of the ADA (46. U.S.C. § 12189) prohibits discrimination against persons with disabilities in professional examinations such as the USMLE Step 1 as follows:

> Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post- secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

60. The NBME is covered by the ADA pursuant to 42 U.S.C. § 12189 in its capacity as the administrator of the USMLE Step 1.

61. Pursuant to 28 C.F.R. § 36.309(b), the NBME must assure that any examination

> is selected and administered so as to best insure that, when the examination is administered to an individual with a disability that impairs sensory, manual or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factors the examination purports to measure, other than reflecting the individual's impaired sensory, manual, or speaking skills.

62. Plaintiff is a qualified student with a disability under the ADA.



63. One reasonable accommodation for a disabled person, such as Plaintiff, that may be allowed under the ADA is lengthening the time permitted for completing the examination.

64. Plaintiff has a learning disability that substantially limits his major life activities of learning, reading and writing. Plaintiff's' condition, which has been diagnosed through testing, examination and evaluation by experts in this field, constitutes a disability within the meaning of the ADA.

65. Under the ADA, a disability is defined, in part, as a physical or mental impairment that substantially limits one or more major life activities of an individual. 42 U.S.C. § 12102(2). Under the authority of 42 U.S.C. § 12134, the Department of Justice has promulgated regulations (28 CFR § 35.104) that include "learning" and "work" within the definition of major life activities. The major life activity of learning also includes "reading" and "writing" as activities protected by the ADA. The "substantially limited" standard for the major life activity of learning, reading, or writing, is established when "the individual's important life activities are restricted as to the condition, manner, or duration under which they can be performed in comparison to most people." 28 CFR, pt. 36, App. B.

66. As noted above, Plaintiff has a learning disability that substantially impairs his ability to read and process the written word. His disability precludes him from learning, reading and writing in the same manner and in the same amount of time as most people. This learning disability substantially limits his activity of learning, reading, and writing, comparison to most people and certainly in comparison to his peers, other medical students taking the USMLE.



67. Failure in the taking of the USMLE necessarily precludes an individual from continuing medical school, employment as a medical doctor in the United States. Successful passing of the USMLE is a prerequisite to licensure to practice medicine in the United States. Thus, Plaintiff's entire future livelihood as a medical doctor rests on this exam.

68. Plaintiff made formal written request of NBME for reasonable accommodation for his disability in connection with taking the USMLE Step 1 Exam, i.e., two times the standard time to take the exam (hereinafter sometimes referred to as "double time"), an accommodation NBME has made to some people who have requested the accommodation. Such accommodations are consistent with the reasonable accommodations he was provided in his previous academic studies. The NBME has granted similar accommodations to other candidates in the past taking the Step 1 exam.

69. The NBME's refusal to provide the reasonable test accommodations Plaintiff requested for the USMLE Step 1 constitutes an illegal failure to accommodate a disabled person in violation of the ADA.

70. Plaintiff will be irreparably harmed and/or has no adequate remedy at law if the NBME fails to expunge his previous three attempts that the NBME required Plaintiff to take in violation of the ADA and without adequate accommodations, in that (a) Plaintiff's' medical school career will be placed on hold because a passing score on the USMLE Step 1 is a prerequisite to continuing his medical school education; (b) Plaintiff's' opportunity to engage in his career of choice is effectively on hold until the NBME is compelled to comply with the ADA.

71. Plaintiff will be irreparably harmed and/or has no adequate remedy at law if the NBME continues its illegal refusal to provide him reasonable accommodations of double time for



the test in that: (a) given his history with prior examinations, including the Step 1 Exam, Plaintiff is justifiably concerned that he will not pass the USMLE Step 1 without the additional extra time accommodation to which he is entitled under the ADA;(b) requiring Plaintiff to take the USMLE Step 1 without adequate accommodation puts him at distinct disadvantage given his disability; and (c) reduced performance on the USMLE Step 1 as a result of not receiving accommodation significantly reduces Plaintiff's' future professional career options.

72. The NBME will not be harmed if the Court grants the requested injunctive relief. Thus, the balancing of harm favors granting the requested injunctive relief.

73. The public interest will be served by granting the requested injunctive relief. The ADA was enacted as a matter of public policy to ensure that disabled persons are treated fairly and provided with equal opportunities to those persons in the community without disabilities. The public interest will not be served by allowing the NBME to continue its unlawful refusal to provide Plaintiff with the ADA accommodations to which he is justly entitled.

74. As a result of the NBME's violation of the ADA, Plaintiff was dismissed from medical school.

75. As a result of the NBME's violation of the ADA, Plaintiff is unable to register for Step 1 of the USMLE because only students attending Medical School may register for the exam.

76. Plaintiff has no adequate legal remedy and the NBME's violations of the ADA can only be remedied by granting Plaintiff injunctive relief requiring the NBME to allow Plaintiff to sit for the Step-1 Exam with his necessary accommodations or expunge his previous attempts that were given without this necessary accommodations.



77. As a result of the NBME's violation of the ADA, Plaintiff suffered or will suffer great injury, including, but not limited to, lost employment opportunities, out-of-pocket pecuniary losses, and severe emotional distress and anguish.

78. The NBME in denying Plaintiff's' for reasonable accommodation violated the ADA and has done so while acting maliciously or with reckless indifference for Plaintiff's' ADA rights.

**WHEREFORE**, Plaintiff, MARCUS HILLIARD, prays that this Honorable Court grant judgment in his favor find that the NBME has subjected and continues to subject Plaintiff to discrimination because of his disabilities in violation of the ADA. Plaintiff respectfully request the following relief:

a. Permanent injunctive relief ordering the NBME allow Plaintiff to sit for the Step 1;

b. Permanent injunctive relief directing the NBME immediately to cease and desist from its refusal to accommodate Plaintiff's' requests for accommodation on the USMLE Step 1 and ordering that the NBME comply with the ADA by allowing Plaintiff the requested accommodation of two times the standard time to take the USMLE Step 1;

c. Permanent injunctive relief direct that NBME comply with the ADA by providing Plaintiff's requested accommodation with regard to the USMLE Step 1 and future USMLE examinations for which Plaintiff is otherwise entitled to sit and for which he otherwise makes proper application;

d. Permanent injunctive relief enjoining the NBME to excuse Plaintiff's previous three attempts at taking the Step 1 exam due to failure to provide reasonable accommodations;

e. Permanent injunctive relief prohibiting the NBME from treating Plaintiff differently than his non- disabled counterparts;



f. Permanent injunctive relief ordering the NBME to undergo periodic training regarding the ADA and disability awareness;

g. All costs incurred by this suit, including any attorney's fees; and

h. Any other and further relief deemed just by this court.

                              Respectfully Submitted,

                              /s/ Cynthia M Rote
                              By: An Attorney for Plaintiff

Cynthia M Rote
Integrate Legal, PC
12533 Wagon Wheel Rd
Rockton, IL 61072
(815) 255-4695
Cynthia@Integrate-Legal.com
Service@Integrate-Legal.com